**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAMIAN TRAPANI,

                Plaintiff,

    v.                                            No. 14-CV-683
                                                    (GTS/CFH)

M. CORYER; et al.,

                Defendants.

---

**APPEARANCES:**                             **OF COUNSEL:**

DAMIAN TRAPANI
Plaintiff <u>Pro Se</u>
32911
Schenectady County Jail
320 Veeder Avenue
Schenectady, NY 12307

HON. ERIC T. SCHNEIDERMAN          NICOLE E. HAIMSON, ESQ.
Attorney General for the                  Assistant Attorney General
State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff Damian Trapani ("Trapani" or "Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."). Presently before the Court is defendants' motion, pursuant to Federal Rules of

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Civil Procedure ("Fed. R. Civ. P.") 41(b) and 12(b)(6), to dismiss Trapani's complaint. Dkt. No. 38. Trapani has opposed the motion. Dkt. No. 41. For the following reasons, it is recommended that defendants' motion to dismiss be granted in part and denied in part.

## I. BACKGROUND

The facts are related herein in the light most favorable to Trapani as the non-moving party. See subsection II(A) infra. At the relevant time, Trapani was confined in the Special Housing Unit ("SHU") at Auburn Correctional Facility ("Auburn C.F."). Compl. ¶ 54. Trapani suffered from various mental health disorders including Intermittent Explosive Disorder. Id. ¶ 141. On February 8, 2011, after several suicide attempts, Trapani was removed from his SHU cell and escorted to the Mental Health Unit ("MHU"). Id. ¶ 55. While Trapani was in an observation cell, he yelled, used vulgar language, and covered up his cell door with a sheet. Dkt. No. 1-1 at 26. During a private interview, Trapani refused to talk and threatened to "bang his head." Id. Trapani's "vitals" and blood pressure were monitored by a nurse. Compl. ¶¶ 56, 57. Shortly after arriving in the MHU, Trapani was advised that he would be returning to the SHU. Id. While enroute to his SHU cell, Trapani experienced sharp pains in his chest and fell to the floor. Id. ¶ 58. Defendants, Correction Officers, Gary Steinberg ("Steinberg"), Bryan Vantassell ("Vantassell"), and James Elser ("Elser") ignored Trapani's request for medical attention, picked him up, and dragged him forward. Id. ¶ 59. Trapani attempted to free himself by kicking defendants. Id. ¶ 60. When Trapani was inside his cell, Steinberg, Vantassell, and Elser "mercilessly and savagely" beat him by throwing him, head first, into the wall. Id. ¶ 63. Defendants kicked and beat Trapani with closed fists. Id. As a result of the incident, Trapani sustained two chipped teeth and an injured toe. Id. ¶ 64.

2

On February 18, 2011, Trapani filed a grievance related to the February 8, 2011 incident.[2] Dkt. No. 1-1 at 8. The Superintendent denied Trapani's grievance and, on June 1, 2011, the Central Office Review Committee ("CORC") upheld the decision.[3] Id.

On March 31, 2011, Trapani threatened to harm himself and was placed in the Residential Crisis Treatment Program ("RCTP") for observation. Compl. ¶ 69. On April 4, 2011, Trapani felt suicidal and asked to remain in the RCTP. Id. ¶ 70. When Trapani was advised that he was being discharged from the RCTP, Trapani refused to leave the observation cell and threatened the staff. Id. ¶¶ 70, 71; Dkt. No. 1-1 at 22. Defendants, Correction Officer Nicholas Wiwsianyk ("Wiwsianyk"), Correction Officer Sean Reilly ("Reilly"), Sergeant J. Wright ("Wright"), Correction Officer T. Clark ("Clark"), and Correction Officer C. Novak ("Novak") used chemical agents to extract Trapani from his cell. Compl. ¶¶ 74, 75. As a result of the incident, Trapani experienced "excruciating and debilitating pain." Id. ¶ 76.

On May 25, 2011, Trapani sent a written complaint to defendant M. Coryer ("Coryer"), the nurse administrator, stating that "something is wrong with my liver and I have yet to be properly screened for cancer or auto immune hepatitis." Compl. ¶ 83; Dkt. No. 1-1 at 1. Trapani advised that he made his complaints known to mental health staff and "told them specifically if I find out something is wrong with me, when I get out in seven more months, and if my condition becomes irreversible, I am going to hunt the people who are responsible down and kill them." Dkt. No. 1-1 at 1.

---

[2] The grievance was not annexed to the complaint and is not part of the record on the within motion.

[3] The Superintendent's Decision was not annexed to the complaint and is not part of the record on the within motion.

3

In June 2011, Coryer issued a misbehavior report charging Trapani with making threats.[4] Compl. ¶¶ 89, 178. Trapani was found guilty of the charges. Id. ¶ 90. In June 2011, Trapani filed a grievance complaining that he received the misbehavior report in retaliation for "exercising his right to be free from cruel and unusual punishment."[5] Id. ¶ 96.

On October 17, 2011, Trapani was admitted to the RCTP because he threatened to harm himself. Compl. ¶ 103. Over his objection, Trapani was discharged from the RCTP and taken to a cell without his personal belongings. Id. On October 25, 2011, after threatening to harm himself, Trapani was removed from his cell and received a tear-resistant safety gown and mat. Id. ¶ 106. On October 26, 2011, while confined in his SHU cell, Trapani used a piece of corroded metal and paint, that he picked off of the wall, to cut his wrists "numerous times." Id. ¶¶ 110, 111. Trapani was removed from his SHU cell and placed in SHU-D-P3 ("P-3"), a cell used to conduct strip searches. Id. ¶ 111.

On October 27, 2011, while confined in P-3, Trapani smeared feces "all over the cell." Compl. ¶¶ 114, 115. Officers told Trapani that the MHU was under renovation and that he would not be admitted to RCTP. Id. ¶ 114. Officers removed Trapani from the cell and placed him in the SHU shower. Id. ¶ 115. While in the shower, Trapani removed a metal hook. Id. Later that day, while confined in P-3, Trapani used the metal hook to cut his wrist. Id. ¶ 116.

On November 4, 2011, after suicidal threats, Trapani was placed in P-3, instead of the

---

[4] The misbehavior report was not annexed to the complaint and is not part of the record on the within motion.

[5] The grievance was not annexed to the complaint and is not part of the record on the within motion.

4

RCTP. Compl. ¶ 120; Dkt. No. 1-1 at 24. Upon entering the cell, Trapani defecated on the floor and smeared feces inside the cell. Compl. ¶ 122. Trapani also spread feces over his body. Dkt. No. 1-1 at 24. Plaintiff threatened the staff and ripped a mattress in an attempt to make a noose and hang himself. Compl. ¶ 122. Unidentified officers entered the cell, removed the piece of mattress wrapped around Trapani's neck, and took Trapani to the showers. Id. ¶ 123. When Trapani returned from the shower, he received an injection of psychotropic medication. Id. ¶ 124. Despite Trapani's objection, defendant Mohammad Masud Iqbal ("Iqbal"), a psychiatrist at Auburn C.F., ordered the injection. Id. ¶¶ 124, 128.

On November 18, 2011, Trapani threatened to harm himself and was admitted to the facility hospital. Compl. ¶ 130. On November 18, 2011, Iqbal ordered another injection of psychotropic medication. Id. ¶ 130. On November 19, 2011, Trapani defecated on the floor and smeared feces in the ward. Id. ¶ 131. Over Trapani's objection, he received the second psychotropic injection. Id. ¶ 135.

Trapani alleges that: (1) Steinberg, Vantassell, and Elser violated his constitutional rights under the Eighth Amendment with the use of excessive force on February 8, 2011; (2) Wright, Clark, Novak, Reilly, and Wiwsianyk violated his constitutional rights under the Eighth Amendment with the use of chemical agents on April 4, 2011; (3) Coryer retaliated against him in violation of his First Amendment rights when she issued the June 2011 Misbehavior Report; and (4) Iqbal violated his Fourteenth Amendment due process rights when he arranged for psychotropic injections in November 2011. See generally, Compl.

5

## II.  DISCUSSION[6]

Defendants move to dismiss the complaint arguing that: (1) Trapani failed to comply with the Court's Orders and Local Rules; (2) Trapani's excessive force claims and retaliation claim are barred by the statute of limitations; (3) Trapani's retaliation claim against Coryer fails to state a cause of action; and (4) Trapani's Fourteenth Amendment claims against Iqbal fail to state a cause of action.  See generally Dkt. No. 38-1.

### A.  Legal Standards
### 1.  Fed. R. Civ. P. 41(b)

Fed. R. Civ. P. 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedure] or a court order . . ." Fed.R.Civ.P. 41(b); see Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962); MTV Networks v. Lane, 998 F.Supp. 390, 393 (S.D.N.Y.1998); see also N.D.N.Y.L.R. 41.2(b).  Since a Rule 41(b) dismissal is a "harsh remedy . . . [it] is appropriate in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citations omitted).  Furthermore, courts should be "especially hesitant" to dismiss an action of a pro se plaintiff for "procedural deficiencies." Spencer v. Doe, 139 F.3d 107, 112 (2d Cir.1998) (internal citations omitted); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  To determine whether dismissal for failure to prosecute is appropriate, courts should consider whether:

> (1) plaintiff's failure to prosecute caused a delay of significant duration; (2) the plaintiff was given notice that

---

[6] All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

6

> further delay would result in dismissal; (3) the defendant
> was likely to be prejudiced by further delay; (4) the need to
> alleviate court calendar congestion was carefully balanced
> against plaintiff's right to an opportunity for a day in court;
> and (5) the trial court adequately assessed the efficacy of
> lesser sanctions.

Lucas, 84 F.3d at 535; see also Lewis v. Rawson, 564 F.3d 569, 576 (2d Cir. 2009) (citations omitted).

### 2. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (citation omitted)).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegal [conduct]")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

### B. Failure to File Change of Address

Defendants move for dismissal of Trapani's complaint based upon Fed. R. Civ. P. 41(b) due to Trapani's failure to abide by the Local Rules of Practice for this district ("Local Rules") and notify the Court of his current address. Dkt. No. 38-1 at 4.

According to the Local Rules, "[a]ll attorneys of record and pro se litigants must immediately notify the court of any changes of address." N.D.N.Y.L.R. 10.1(c)(2) (emphasis omitted). Failure to do so will subject the action to dismissal under Rule 41(b) of the Federal Rules of Civil Procedure and Local Rule 41.2(b) for lack of prosecution. See e.g., Fenza v. Conklin, 177 F.R.D. 126, 127 (N.D.N.Y. 1998).

On November 19, 2015, the Court mailed a copy of a Text Order to Trapani. Dkt. No. 32. On December 7, 2015, the aforementioned mailing was returned to the Court and marked "RTS." Dkt. No. 37. On December 18, 2015, defendants filed the within motion.

8

Dkt. No. 38. On December 28, 2015, the Court received a Notice from Trapani indicating that he was confined at Schenectady County Jail ("Schenectady C.J.") after being temporarily released in September 2015. Dkt. No. 40. Trapani explained that he could not update his address during that time because he was homeless. Id.

Defendants do not claim that they suffered or are likely to suffer prejudice by Trapani's delay in updating his address. Generally, the duration of time at issue herein, less than four months, is not long enough to warrant dismissal. Hale v. Rao, No. 9:08-CV-612 (DNH/GHL), 2009 WL 3698420, at *9 (N.D.N.Y. Nov. 3, 2009). Moreover, while Trapani failed to comply with this district's Local Rules requiring him to "immediately" notify the Court and defendants of any change of address, Trapani's explanation that he was incapable of providing an address change due to being homeless, weighs against dismissal of his complaint.

Based upon the facts and procedural posture of this matter, the undersigned is not persuaded by the holdings of the cases cited by defendants in support of the within motion. See Fenza, 177 F.R.D. at 126 (dismissing the complaint where the Court received no communication from the plaintiff for nine months and the defendants' motion papers were undeliverable); see also Dansby v. Albany Cty. Corr. Staff, No. 95-CV-1525 (RSP/RWS) 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996) (dismissing the complaint because the plaintiff failed to sign the complaint, file a Rule 11 affidavit, or change his address). Here, Trapani received defendant's motion to dismiss and submitted opposition thereto. Defendants' reply memorandum of law was served upon plaintiff at Schenectady C.J. on January 11, 2016. Dkt. No. 42-1. The docket does not indicate and defendants do not allege that Trapani did not receive the submission.

9

Accordingly, defendants' motion to dismiss all claims pursuant to Rule 41(b) should be denied.

### C. Statute of Limitations

Defendants argue that Trapani's excessive force claims and retaliation claim should be dismissed because they are time barred by the three-year statute of limitations. Dkt. No. 38-1 at 7. Trapani claims that the statute was tolled while he pursued administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). Dkt. No. 41 at 7.

The statute of limitations period for section 1983 claims brought in federal court in New York is three years, which accrues from the date "the plaintiff 'knows or has reason to know of the injury which is the basis of his action.' " Bradley v. Rell, 703 F. Supp. 2d 109, 125 (N.D.N.Y. 2010) (quoting Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980), cert. den., 450 U.S. 920 (1981)) (additional citations omitted). However, the Second Circuit has held that equitable tolling is applicable to claims brought under the PLRA, otherwise a prisoner would risk the dismissal of his or her complaint based on untimeliness if he or she were to wait to receive a final administrative decision before filing suit. Gonzalez v. Hasty, 651 F.3d 318, 323–24 (2d Cir. 2011) (noting that the Ninth, Fifth, Seventh, and Sixth Circuits have all held that equitable tolling applies to the time period in which a prisoner is exhausting his or her administrative remedies). Under the Second Circuit's rule, the equitable tolling period begins when a plaintiff first raises his administrative claim, and ends when the plaintiff's administrative remedies are deemed exhausted. Gonzalez, 651 F.3d at 324. The statute of limitations, however, is only tolled during the period when a prisoner is "actively exhausting" his administrative remedies. See id. at 322 n.2. The statute of

limitations is not tolled during the period between the accrual of the claims and when the plaintiff began the administrative remedy process. Id. at 324.

### 1. Claims Arising from February 8, 2011 Incident

Trapani's excessive force claim accrued on February 8, 2011, the date on which he learned of the alleged constitutional violation. On February 18, 2011, Trapani filed a grievance regarding the February 8, 2011 incident. Dkt. No. 1-1 at 8. On June 1, 2011, Trapani received notice of the Central Office Review Committee's ("CORC") decision on his grievance.[7] Id. On June 1, 2014, Plaintiff signed his complaint in this action.[8] Dkt. No. 1 at 50. Based on Trapani's assertions, because he was actively pursuing administrative remedies, the statute of limitations period for the February 8, 2011 incident was tolled between February 18, 2011 and June 1, 2011. Defendants argue that since Trapani waited until February 18, 2011 to file his grievance, the statute of limitations ran for nine days before it was tolled. Dkt. No. 42 at 4. Therefore, defendants contend that the statute of limitations on the excessive force claims arising from the February 8, 2011 incident expired on May 24, 2014. Id.

Here, the statute of limitations was tolled for a total of 101 days from February 18, 2011

---

[7] CORC review is the last step in the administrative grievance process. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d). Once CORC issues its decision, the claim is deemed exhausted, and the grievant may file suit in federal court. See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011).

[8] Defendants concede that Trapani submitted the complaint through the prison mail system on or about June 1, 2014, but contend that it was returned to him on June 2, 2014 for lack of postage. Dkt. No. 1-1 at 6. Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed. See Houston v. Lack, 487 U.S. 266, 276 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2011) (citation omitted).

until June 1, 2011. However, because Trapani did not file a grievance regarding the alleged constitutional violation until ten days after the incident occurred, the statute of limitations was not tolled between February 8, 2011 and February 18, 2011. See Gonzalez, 651 F.3d at 322 n.2 (noting that, "if an inmate's claim accrues on January 1, 2010, and the inmate does not begin pursuing administrative remedies until December 1, 2010, any subsequent tolling that may be applicable would not include this eleven month period."). Accordingly, the statute of limitations on Trapani's excessive force claims arising out of the February 8, 2011 incident lapsed on May 20, 2014. Trapani signed his complaint on June 1, 2014, eleven days after the statute of limitations expired. See Compl. at 50. Accordingly, these claims are barred by the statute of limitations.

Trapani received notice and an opportunity to be heard with respect to tolling arguments. See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2008). Trapani opposed the motion to dismiss and presented arguments related to tolling based upon his attempts to exhaust his administrative remedies. Dkt. No. 41. Trapani did not present any further arguments in support of equitable tolling. From the facts alleged in the complaint, Trapani's excessive force claims arising from the February 8, 2011 incident are time barred.

### 2. Excessive Force Claims Arising from April 4, 2011 Incident and Retaliation Claim Based upon June 2011, Misbehavior Report

Defendants argue that the excessive force claims arising out of the April 4, 2011 incident and retaliation claim based upon the June 2011 Misbehavior Report are barred by the statute of limitations because plaintiff provided, "insufficient information regarding how long, if at all, the statute of limitations should be tolled for these claims." Dkt. No. 42 at 5.

12

Defendants misconstrue Trapani's burden of proof in this regard.

"The statute of limitations is an affirmative defense, and on a motion to dismiss pursuant to such defense, the defendant has the burden of demonstrating, based on the allegations in the complaint, that the claim is untimely." Egan v. Kennedy, No. 04-CV-6626, 2008 WL 4647740, at *3 (W.D.N.Y. Oct. 17, 2008). "If the defendant meets this burden, then the plaintiff has the burden to show that the limitations period should be tolled." Id. (quoting Omollo v. Citibank, N.A., No. 07 Civ. 9259, 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008)); see also Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co., No. 09 CIV. 9802, 2010 WL 1838730, at *4 (S.D.N.Y. May 4, 2010) ("Plaintiffs' obligation to produce evidence at the motion to dismiss stage is even further reduced in the context of a motion to dismiss premised on the statute of limitations—an affirmative defense on which the defendant bears the burden of proof.").

Construing the complaint liberally, with the "special solicitude" a court must afford the non-movant, see Triestman, 470 F.3d at 477, dismissal of these claims, based upon the statute of limitations, is not warranted. With respect to the accrual date for the retaliation claim, the record before the undersigned lacks any information related to the June 2011, Misbehavior Report, including the date that it was issued. Therefore, the undersigned is unable to determine when the retaliation claim accrued. Further, Trapani alleges that the statute was tolled during the time that he actively pursued his administrative remedies with respect to the excessive force claims and retaliation claim. Dkt. No. 41 at 7-8. On April 21, 2011 and June 26, 2011, Trapani filed grievances. See Compl. ¶¶ 144, 145. The complaint does not contain facts specifying which incidents were addressed in these grievances. At this juncture, Trapani has alleged sufficient facts that render his excessive force claims and

retaliation claim timely.

Accordingly, the undersigned recommends that defendants' motion to dismiss Trapani's excessive force claims related to the February 8, 2011 as untimely be granted. It is further recommended that defendants' motion to dismiss the excessive force claims related to the April 4, 2011 incident and the retaliation claim based upon the June 2011 Misbehavior Report, as untimely, be denied.[9]

### D. First Amendment

Defendants contend that Trapani has failed to state a cause of action for retaliation against Coryer. Dkt. No. 38-1 at 8. Specifically, defendants allege that the complaint lacks any facts suggesting a causal connection between any protected speech and any retaliatory act by Coryer. Dkt. No. 38-1 at 9.

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F.Supp.2d 317, 347 (N.D.N.Y. 2010). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a

---

[9] Defendants do not present any further argument in support of dismissal of Trapani's excessive force claims.

14

constitutionally proscribed retaliatory act."  Dawes v. Walker, 239 F.3d 489 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988).

As to the first element of the retaliation claim, it is well settled that the filing of grievances constitutes protected activity for purposes of a First Amendment retaliation analysis.  See Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right.").  In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).  While there is no "bright line" defining the limits of the temporal relationship, courts in this Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory.  See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001); see also Ashok v. Barnhart, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003) (reasoning that the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214–15 (N.D.N.Y. 2008).  To that end, there is a "presumption that a prison official's acts to

15

maintain order are done for a proper purpose." Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.1998) (citation omitted). The Second Circuit has explained that "the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." Id. If a plaintiff satisfactorily alleges that an improper motive played a substantial part in the defendant's action, the defendant must show that it would have taken "exactly the same action absent the improper motive." Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

On May 25, 2011, Trapani sent a written complaint to Coryer. Dkt. No. 1-1 at 1. Therefore, he was engaged in constitutionally protected conduct. Johnson, 8 F. App'x at 144. In June 2011, Coryer authored a misbehavior report charging Trapani with making threats. At this juncture, the allegations are sufficient to satisfy the second prong of the retaliation analysis. See Gill, 389 F.3d at 384 (holding that the filing of a false misbehavior report constitutes an adverse action). With regard to the third element, the temporal proximity between the protected activity and adverse action is sufficiently alleged to defeat a motion seeking dismissal of a retaliation claim. See, e.g., Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted).

Defendants claim that Coryer would have taken the same action against Trapani absent the protected speech or retaliatory motive. Dkt. No. 38-1 at 10. However, defendants have not presented any explanation of Coryer's alleged non-retaliatory motives. The Court is unable, on a motion to dismiss, to resolve factual disputes regarding whether Coryer would have issued the misbehavior report in the absence of retaliatory motive. See Carl v. Dirie,

16

No. 9:09-CV-0724 (GTS/RFT), 2010 WL 3338566, at *6 (N.D.N.Y. Mar. 29, 2010) (denying the defendant's motion to dismiss a retaliation claim due to factual issues regarding whether the defendants would have taken the same actions in the absence of retaliatory motives).

Accordingly, it is recommend that defendants' motion to dismiss Trapani's retaliation claim against Coryer be denied.

### E.  Due Process

Defendants move to dismiss Trapani's Fourteenth Amendment claim against Iqbal for failure to state a claim. Dkt. No. 38-1 at 11. Defendants argue that Iqbal arranged for Trapani to receive psychotropic intramuscular injections because Trapani was a danger to himself and DOCCS staff. Dkt. No. 38-1 at 13.

"[G]iven the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Washington v. Harper, 494 U.S. 210, 227 (1990).  Further. "[t]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if he is dangerous to himself or others and the treatment is in his medical interest." Id. at 227-229 (holding that the procedural protections required must be determined with reference to the rights and interests at stake in the particular case).  "[T]here must be a showing that the inmate has a serious mental illness, that he poses a danger to himself or others, and that the proposed treatment is in the inmate's medical interest." U.S. v. Hardy, 724 F.3d 280, 296 (2d Cir. 2013).  "[C]ourts have determined that substantive due process dictates that psychotropic drugs be

17

administered to an involuntarily committed patient over objection only where: (1) the patient is incompetent to make medical decisions, (2) the patient is dangerous to himself or others, and (3) the treatment is in the patient's medical interest. " Meyers v. New York Atty. Gen., No. 12-CV-04450 CBA LB, 2013 WL 244934, at *7 (E.D.N.Y. Jan. 17, 2013) (citation and internal quotation marks omitted); see also Inesti v. Hogan, No. 11 CIV. 2596, 2013 WL 5677046, at *11 (S.D.N.Y. Sept. 30, 2013) ("[I]t is well settled that a patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution.") (citations omitted). The Second Circuit has cautioned that "deference . . . is owed to medical professionals who have the fulltime responsibility of caring for mentally ill inmates . . . and who possess, as courts do not, the requisite knowledge and expertise to determine whether the drugs should be used in an individual case." Hardy, 724 F.3d at 295 (citing Washington, 494 U.S. at 231) (internal quotation marks omitted).

In the present case, Trapani claims that Iqbal forcibly administered an injection of "psychotropic" medication, over his objection, "even though substantial time had passed since Trapani tried hanging himself with [a] piece of ripped mattress and there was [sic] no more problems out of him during the interim." Compl. ¶ 166. Trapani argues that the November 19, 2011 injection was ordered one day prior, upon his admission to the hospital, without a "precipitating event justifying such an order." Dkt. No. 1-1 at 21. Trapani contends that Iqbal issued "prearranged" and "advance standing orders for force administration of anti-psychotic medications" to punish him without notice or a hearing. Dkt. No. 41 at 10.

18

"It is important to recognize the difference between disposing of a case on a [motion to dismiss] and resolving the case later in the proceedings, for example by summary judgment." See McGuire v. Warren, 207 F. App'x 34, 35 (2d Cir. 2006) (internal quotation marks and citation omitted). "At the [motion to dismiss] stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." Id. (citations and internal quotation marks omitted). At this stage of the litigation, the complaint, when liberally construed, sufficiently alleges that Iqbal administered psychotropic drugs over Trapani's objections in violation of the due process clause. Trapani concedes that he made several attempts to harm himself and repeatedly threatened suicide. Despite those attempts and threats, Trapani alleges that defendants continually refused to admit him to the MHU and RCTP. See Compl. ¶ 94, 109, 114, 119, 120. In the instances when he was admitted to the MHU or RCTP, Trapani contends that he was prematurely discharged despite his continued threats to harm himself. See id. ¶¶ 55, 57, 70-72, 74, 103-105, 120. Accordingly, the issue of whether defendants reasonably believed that Trapani was a threat to himself or others, is a question of fact that cannot be resolved on the record before the undersigned on a motion to dismiss.

Accordingly, defendants' motion on this ground should be denied.

### III. CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion to dismiss based upon Fed. R. Civ. P. 41(b)

(Dkt. No. 38) be **DENIED**; and it is further

**RECOMMENDED**, that defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 38) be **GRANTED** as to:

a. Excessive force claims arising from the February 8, 2011 incident against Steinberg, Vantassell, and Elser; and it is further

**RECOMMENDED**, that defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 38) be **DENIED** as to plaintiff's:

a. Excessive force claims arising from the April 4, 2011 incident against Wright, Clark, Novak, Reilly, and Wiwsianyk; and

b. Retaliation claim against Coryer; and

c. Fourteenth Amendment claims against Iqbal; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: June 6, 2016
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge